UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
SUPER LAUNDRYLAND, INC. and DANIEL HO RA :
: Docket No.:
Plaintiffs, : 07-cv-2319(HB)
:
- against - :
: DECISION AND ORDER
U.S. UNDERWRITERS INSURANCE COMPANY, :
:
Defendant. :
------------------------------------------------------------------------x
U.S. UNDERWRITERS INSURANCE COMPANY, :
:
Third-Party Plaintiff, :
:
- against - :
:
DAVID FRAZER, :
:
Third-Party Defendant. :
:
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:[1]**

Super Laundryland, Inc. and Daniel Ho Ra seek a Declaration that insurer, U.S. Underwriters Insurance Company, owes a defense and indemnification to Plaintiffs in connection with the underlying personal injury litigation brought by David Frazer in the Supreme Court of the State of New York, Bronx County ("underlying action"). For the following reasons, I grant the declaration to Super Laundryland, Inc., the signatory to the insurance contract.

## I. FACTS

*Insurance Policy # CL3089610*

Plaintiff procured a general insurance policy[2] from Defendant. (Trial Transcript ("Tr.") 33.) All policy premiums were paid and up to date. (*Id.* at 59.) Amy French, U.S. Underwriters Claims Examiner, confirmed that the policy was in effect on June 17, 2006, the date of Mr. Frazer's accident. (*Id.* at 125.) Plaintiff's insurance policy required that the insured notify the insurer as soon as practicable of an occurrence or an offense and that, "[i]f a claim is made or a

---

[1] I would like to thank Mr. Stephen Ahron of Cardozo Law School, my Summer 2008 intern for his invaluable efforts in researching and drafting this opinion.
[2] Plaintiff Exhibit 1.

'suit' is brought against any insured, you must: (1) Immediately record the specifics of the claims or 'suit' and the date received; and (2) Notify us [U.S. Underwriters] as soon as practicable." (Plaintiff's Post-Trial Memorandum of Law ("Pl. Mem.") 2-3.)

*Frazer Incident*

On June 17, 2006, Frazer fell and injured himself at Super Laundryland. (Compl. ¶ 23, Ex. 2.) Super Laundryland had only opened for business six months before Frazer's accident. (Tr. at 30.) Super Laundryland had been inspected and approved by the appropriate building departments before opening its doors. (*Id.* at 37-8.) Ra installed rugs on the stairs and ensured that they were checked daily by either himself or his employees, as part of the complete store inspection, to make certain that they were not slippery and remained properly affixed to the stairs. (*Id.* at 88.) Prior to Frazer's incident, neither customers nor employees of Super Laundryland had complained to Ra about the condition of the stairs and Ra was not aware of any prior slip and fall incidents. (*Id.* at 41.)

Frazer fell down a small staircase in Super Laundryland after swinging his laundry bag around his shoulder. (Surveillance Video of the Incident, Exhibit ("Ex.") 11.) Ra learned of Frazer's incident from his employee Ms. Mora. (Tr. at 42.) Mora told Ra that she had overheard Frazer say that he fell because of his bag and that the EMT checked the stairs and found them to be in satisfactory condition. (*Id.* at 42-3, 213, 284, 288.) Additionally, Mora told Ra that she called an ambulance for Frazer because he did not get up off the ground for fifteen to twenty minutes, however, he was not yelling or screaming in pain. (*Id.*) Frazer was removed from Super Laundryland by EMS. (*Id.* at 43.)

Ra reviewed surveillance footage of the incident and saved a brief portion of the footage that showed Frazer entering and falling down. (*Id.* at 44; *see* Ex. 11.) Despite Ra's testimony, in which he explained that he is unsure why he saved the footage, Defendant asserts that the "only" reason to have saved the footage is to prepare for potential litigation. (Tr. at 46; *see* Defendant's Post-Trial Memorandum of Law ("Def. Mem.") 5.)

Frazer had never complained about the condition of the stairs or the rugs slipping under him before the date of his accident. (*Id.* at 223.) Additionally, Frazer did not observe any wetness or debris on or about the stairs either before he fell or immediately after. (*Id.* at 223.) There was no communication between Frazer or anyone claiming to represent him and Super Laundryland from the date of the incident until Super Laundryland was served with the summons

and complaint for the underlying action in late August. (*Id.* at 52-3.) U.S. Underwriters first received notice of Super Laundryland's claim for coverage surrounding the Frazer incident on or about September 1, 2006. (Ex. E.) U.S. Underwriters issued a letter disclaiming coverage to Super Laundryland for claims arising out of the Frazer incident on September 27, 2006. (Ex. L.)

## II. DISCUSSION

The policy language is to be construed in accordance with New York law. 2006 SRI v. WTCP, 2006 WL 3073220, at *5.

*Obligation of an Insurance Company to Defend & Indemnify Insured*

Generally, an insurance company has an obligation to defend its insured from claims covered by the policy[3] and to indemnify the insured in the event of an incident. *See generally Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822, F.2d 267, 273 (2d Cir. 1987). However, specific notice provisions in the insurance contract limit this obligation. "Compliance with notice requirements set forth in an insurance contract is a condition precedent to recovery under New York law, and a failure by the insured to comply with such requirements relieves the insurer of liability." *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 748 F.2d 118, 121 (2d Cir. 1984). Notice is to be given "as soon as practicable" after an occurrence[4] when considering all of the facts and circumstances surrounding the event. *See id.* at 122. "The test for determining whether the notice provision has been triggered is whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Commercial Union Ins. Co.*, 822, F.2d at 272. "As soon as practicable" is a term of art used to describe whether or not an insurance company received timely notice of an occurrence or claim. *Aurelio Argentina v. Otsego Mutual Fire Ins. Co.*, 86 N.Y.2d 748, 750 (1995). All that the "as soon as practicable" notice provision requires is that notice be given within a reasonable time after the occurrence under all of the circumstances. *Sec. Mutual Ins. Co. v. Acker-Fitzsimons Corp.*, 31 N.Y.2d 436, 441 (1972) (internal citation omitted).

> It is well settled that the phrase, "as soon as practicable" is an elastic one, not to be defined in a vacuum. By no means does it connote an ironbound requirement that notice be "immediate" or even "prompt", relative as even those concepts often are; "soon", a term close to each of these in common parlance, is expressly qualified in the policy here by the "practicable." Nor was compliance with the

---

[3] Super Laundryland, Inc., not Daniel Ho Ra, is the insured in the policy at issue. (Ex. 1.)
[4] In reading this opinion the words "occurrence," "incident," "event," and "accident" should be considered synonymous

3

> insurance policy's temporal requirement to be measured simply by how long it was before written notification came forth. More crucial was the reason it took the time it did. So, the provision that notice be given "as soon as practicable" called for a determination of what was within a reasonable time in light of the facts and circumstances of the case at hand.

*Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 19 (1972) (citation omitted). In those circumstances, where the insured reasonably believes that he is not liable, notice "is given as soon as practicable if given promptly after the insured receives notice that a claim against him will in fact be made." *D'Alois v. Travelers Ins. Co.*, 207 A.D.2d 820 (2d Dep't 1994); *see also 875 Forest Ave. Corp. v. Aetna Cas. & Sur. Co.*, 37 A.D.2d 11 (1st Dept. 1971). Finally, there is no inflexible test of reasonableness because as with many questions of fact, the outcome of a particular case is driven by the specific factual circumstances of that case. *Mighty Midgets, Inc.*, 47 N.Y.2d at 19-20.

### *Super Laundryland Had a Good Faith Belief in Non-liability for Mr. Frazer's Injuries*

The evidence supports Plaintiffs' reasonable belief that neither he nor his business could be held liable for the accident. Neither Frazer nor anyone purporting to represent him ever contacted Super Laundryland or Ra after the incident until the summons and complaint were served. (Tr. at 53.) Further, Frazer did not return to Super Laundryland at any point before service and there was no evidence presented that anyone associated with Frazer was investigating the incident. Moreover, Amy French, U.S. Underwriter's claims examiner, testified that in her mind the claim had no merit and she communicated this view to the Plaintiff around September 27, 2006. (Tr. at 141.) It is certainly plausible that if a claims examiner, with over twenty-six years of experience, does not believe that the case has merit, Ra, who has never faced a similar suit,[5] could reasonably believe that Super Laundryland was not liable before he was served.

U.S. Underwriters disclaimed coverage based "solely [on] late notice reporting of the occurrence." (Tr. at 154.) The investigation, commissioned by Defendant, found no defect in the stairs, the handrail, or the rug. (*See* Claims Report, Ex. K; Tr. 150-52.) Moreover, the surveillance video evidence is not indicative of any flaw in the stairway that caused the fall and

---

[5] There was a workers compensation suit to which he was a party during the construction phase of Super Laundryland, however, never a suit that he was forced to defend personally or a similar set of facts.

4

French testified to the same.[6] (Tr. at 152.) Moreover, French testified that there were no eyewitnesses discovered in the course of her company's investigation that suggested that the stairs were at all slippery. (*See id.* at 151.) Based on the investigation she commissioned, French testified that she tried to convince the Frazer's counsel to drop the case because in her mind the case had no merit. (*See id.* at 141.) To reiterate, if a claims examiner with twenty-six years of experience does not find merit in a claim, it is rational that in advance of being served with that claim Plaintiffs reasonably believed in their non-liability.

Defendant asserts that the "only" explanation for Ra saving the surveillance footage was to prepare for a potential lawsuit. (*See* Def. Mem. at 5.) Ra viewed surveillance footage of Frazer's incident shortly after he arrived at Super Laundryland. (Tr. at 44.) Ra saved a very brief portion of the footage depicting Frazer falling. (*See* Ex. 11.) Ra testified that he is not sure why he saved the footage. (Tr. at 46.) Defendant points to a statement Ra made when interviewed by the insurance company in which he said, "I kept the surveillance tape for proof of accident." (Ex. K.) I do not find Defendant's argument compelling. Ra's testimony, under oath, that he did not know why he saved the footage is of greater probative value than an alleged statement made in an insurance interview. Furthermore, there are potentially innumerable explanations for why Ra kept the footage having nothing to do with preparation to defend against a potential suit.

Defendants argue that by virtue of Super Laundryland being located in the Bronx, a "very litigious community," that Ra should have notified U.S. Underwriters immediately of Frazer's incident. (Tr. at 193.) However, there are several flaws in Defendant's argument. For example, Super Laundryland, which was only open six months at the time of Frazer's accident, was Ra's first business venture in New York and Defendant offered no substantive evidence that Ra knew that the Bronx is a "litigious" venue. (*See* Pl. Mem. at 8.) Additionally, Defendant supported its suggestion as to Ra's motives for saving part of the surveillance tape and not immediately notifying U.S. underwriters with little more than speculative and conclusory statements by Claims Examiner French. (*See* Tr. at 193.)

---

[6] The Court: Didn't you see the video? Did you see anything wrong with that?
Ms. French: That's why I testified saying everything appeared to be OK.

I find Super Laundryland to have had a reasonable belief in non-liability for Mr. Frazer's injuries suffered on June 17, 2006 at Super Laundryland before being served with the summons and complaint.

*Notice of the Incident Was Submitted as Soon as Practicable When Considering All of the Circumstances*

Plaintiff's reasonable belief in the non-liability of Super Laundryland excuses the failure to notify U.S. Underwriters of the occurrence. *See 875 Forrest Ave. Corp.*, 37 A.D.2d at 13 (holding that an insured's knowledge of an accident does not always give rise to a duty to report the accident to his insurer). Ra notified his insurance broker of the complaint almost immediately after being served and U.S. Underwriters has conceded that there is no issue regarding the timeliness of this notice. (Tr. at 130-31.) Therefore, since the facts of Frazer's occurrence are such that the insured, in good-faith, did not "reasonably believe that liability on his part will result, notice of the occurrence given by the insured to the insurer is given 'as soon as practicable' if given promptly after the insured receives notice that a claim" will be made. *Merchant's Mut. Ins. Co. v. Hoffman*, 56, N.Y.2d 799, 801 (1982); *see also D'Aloia*, 85 N.Y.2d at 826.

*U.S. Underwriters' Last Minute Rescission Argument Fails*

U.S. Underwriters first attempted to rescind the policy at issue based on their claim that there was a discrepancy in the number of dryers in Super Laundryland compared to the number listed on the policy during this declaratory action. (Tr. at 24.) Although there is little testimony on the issue, it is unnecessary because the U.S. Underwriters' rescission point based on the number of dryers has been waived. *See Hanover Ins. Co. v. Suffolk Overhead Door Co.*, 207 A.D.2d 428, 430 (2d Dep't 1994); *see also Schirmer v. Penkert*, 41 A.D.3d 688, 690 (2d Dep't 2007). N.Y Ins. Law § 3420(d) requires that written notice of a disclaimer be given as soon as reasonably possible after the insurer first learns of the grounds for disclaimer. *Hanover Ins. Co.*, 207 A.D.2d at 430. U.S. Underwriters knew the type of machines and the amount of machines in Super Laundryland when they issued the insurance policy some six months earlier. Therefore, since Defendant knew about the number and type of machines at the time of issuance and made no attempt to rescind the policy before now, this argument is deemed waived.

## III. CONCLUSION

Super Laundryland, Inc. is owed a defense and indemnification in the underlying action under policy # CL3089610 up to its coverage amount.[7] The policy provides for indemnification and defense of Super Laundryland, Inc., but not for Daniel Ho Ra. The parties are instructed to attempt to resolve this matter between themselves and any other open items and report back on their progress to this Court on August 20, 2008 at 9:30 a.m. in Courtroom 23B.

**SO ORDERED**
New York, New York
August 11, 2008

_____
U.S.D.J.

---

[7] $300,000. Ex. 1.

7